232 P.3d 342 (2010)
Angel L. MEDINA, Appellant,
v.
BOARD OF TRUSTEES OF the POLICE & FIRE RETIREMENT BOARD OF the CITY OF WICHITA, Kansas, Appellee.
No. 102,097.
Court of Appeals of Kansas.
May 21, 2010.
*343 Donald N. Peterson and Sean M. McGivern, of Withers, Gough, Pike, Pfaff & Peterson, LLC, of Wichita, for appellant.
Brian K. McLeod, deputy city attorney, for appellee.
Before HILL, P.J., PIERRON, J., and BUKATY, S.J.
HILL, J.
In this appeal of an order granting summary judgment to the Trustees of the Police & Fire Retirement Board of the City of Wichita, we affirm the district court because the claimant, Angel L. Medina, failed to show his injury, arising from him getting out of a patrol car, was a service-connected disability as envisioned in the city's ordinance. We affirm the Board's denial of benefits to Medina just as the district court ruled. Before discussing the merits of the case though, we must address two procedural questions raised by the Board: whether we have jurisdiction to hear this matter and whether Medina preserved his arguments for appeal to the district court. Our answer to both questions is yes. First, the district court had everything from the administrative record it needed to make its decision despite the fact that Medina failed to file the record of the Board's proceedings with the district court. Second, the rules that ordinarily apply to appeals from state agencies to a district court do not apply here because the Board is an administrative body of a city. Medina's first opportunity to make these arguments was in district court; therefore, the district court properly entertained them.

Medina is hurt getting out of a car and claims a disability.
While on patrol in Wichita in December 2005, Officer Angel L. Medina was dispatched to assist with an unattended child. When he arrived at the scene, he twisted his right knee when he got out of his patrol car. Sometime later, his right knee buckled. This happened at his home. Ultimately, Medina received workers compensation benefits for injuries to both knees and his right ankle.
The City of Wichita has established a retirement system for its police and fire officers. That system is administered by a Board of Trustees. That Board receives applications for benefits and decides whether or not to make awards. Accordingly, Medina sought disability retirement benefits from the Wichita Police & Fire Department System. In his application, Medina claimed a service-connected disability. He informed the Board he had received medical treatment *344 for his injuries and all that was left to do was to fuse his ankle. Medina claimed this resulting disability, a fused ankle, prevented him from working as a patrolman for the police department.
After collecting records and conferring several times, the Board turned down Medina's claim. The Board reasoned that since Medina's initial injury, the twisted knee, was not a "physical or mental incapacity resulting from external force, violence, or occupational disease occasioned by an act of duty . . . imposed by the ordinance or rules and regulations of the City, or any other disability, which may be directly attributable to the performance of an act of duty," Medina's claim must be rejected. Medina appealed this denial to the district court which ultimately granted summary judgment to the Board of Trustees.
Now, to us, Medina contends the Board and the district court have misinterpreted the controlling Charter Ordinance 205. In Medina's view, he was only required to show that he was injured while engaged in the performance of his duty. According to Medina, there is ample evidence in the record to support his contention and the City of Wichita should be estopped from denying this since the city stipulated in his workers compensation case that his injury was work related. We disagree with Medina's interpretation of the Charter Ordinance because his reading of that law is too narrow. But we must first address two procedural questions.

Medina perfected his appeal to district court and thus to this court.
The Board claims the district court had no jurisdiction to consider Medina's appeal because he did not file the administrative record of the Board's proceedings with the district court. The Board cites K.S.A. 60-2101(d) as procedural authority. That law states:
"A judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal. If no other means for perfecting such appeal is provided by law, it shall be sufficient for an aggrieved party to file a notice that such party is appealing from such judgment or order with such subdivision or agency within 30 days of its entry, and then causing true copies of all pertinent proceedings before such subdivision or agency to be prepared and filed with the clerk of the district court in the county in which such judgment or order was entered. The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require. A docket fee shall be required by the clerk of the district court as in the filing of an original action." (Emphasis added.)
We agree with the Board that the Wichita Police & Fire Department System is a political subdivision that exercises judicial or quasi-judicial functions. Therefore, K.S.A. 60-2101(d) controls.
Correspondingly, though, courts have interpreted the statute to mean that a party has a "reasonable" time to cause the administrative record to be prepared and filed with the district court. LeCounte v. City of Wichita, 225 Kan. 48, 54-55, 587 P.2d 310 (1978); Francis v. U.S.D. No. 457, 19 Kan.App.2d 476, 479, 871 P.2d 1297, rev. denied 255 Kan. 1001 (1994).
Even though Medina concedes that he did not file the administrative record with the district court, we note Medina did request true copies of the appropriate proceedings from the Board so he could perfect his appeal. But the Board forced an acceleration of the procedures in this case by filing a motion for summary judgment just 21 days after Medina filed his petition in district court. It would be unreasonable for a court to require Medina to have the entire administrative record filed in under 21 days. After all, the Supreme Court in LeCounte held it was unreasonable to require an aggrieved party to prepare and complete an administrative record within 30 days.
The Board's reliance upon Francis is unpersuasive. In Francis, the court held the plaintiff failed to perfect an appeal when she *345 failed to notify the administrative agency of her appeal within 30 days of its decision. 19 Kan.App.2d at 478-80, 871 P.2d 1297. The court noted the "critical requirement" of K.S.A. 60-2101(d) is the filing of notice with the administrative agency. 19 Kan.App.2d at 479, 871 P.2d 1297. Failure to file notice is not the issue before this court.
Going further, we see no prejudice to the Board here. In its brief the Board does not point out any necessary document that was not filed with the district court. It appears to us that the Board filed copies of its proceedings with the district court because the Board referred to those records in its motion for summary judgment. Nor can we say the district court was deprived of any important part of the administrative record. The district court had all of the information it needed to rule on the summary judgment motion.
Medina's failure to file the record is not fatal to his appeal under these facts. In In re Lakeview Gardens, Inc., 227 Kan. 161, 167, 605 P.2d 576 (1980), the Supreme Court stated that while filing a timely notice of appeal is jurisdictional, the failure to comply with other requirements such as a timely designation of the record is not jurisdictional when no prejudice results. See also Kleibrink v. Missouri-Kansas-Texas Railroad Co., 224 Kan. 437, 581 P.2d 372 (1978). That rule should prevail here. Since the Board shows no prejudice, Medina's failure to timely file the administrative record of proceedings did not prevent the district court from considering the Board's motion for summary judgment, and thus we have jurisdiction to entertain the appeal.

Medina could argue his interpretation of the Ordinance to the district court.
The Board contends that Medina could not raise the issue of his interpretation of Charter Ordinance 205 to the district court because he made no such argument to the Board. The Board cites the ruling in Scheidt v. Teakwood Cabinet & Fixture, Inc., 42 Kan.App.2d 259, 264, 211 P.3d 175 (2009), as support. In fact, the record reveals that Medina made no statement, presented no witnesses, and appeared unrepresented by counsel at the Board hearing where the Board denied his claim. Medina presented his argument about the ordinance in his response to the motion for summary judgment in district court. We are unpersuaded for two reasons.
First, the ruling in Scheidt, and a host of other cases, arises in disputes controlled by the Kansas Judicial Review Act found at K.S.A. 77-601 et seq. The Act applies to all state agencies. See K.S.A. 77-602(a). The Board in this case is not a state agency and thus the Act does not apply.
Second, in all of the cases that prohibit a party from raising an issue not raised at an administrative hearing, an intermediate administrative body was present that could consider factual and legal arguments before that party sought relief from the district court through an appeal. Medina had no such opportunity here. His next and only step was a district court appeal.

Medina reads Charter Ordinance 205 too narrowly.
Basically, Medina contends that all he had to prove is that he was permanently injured while he was engaged in the performance of his duties. The Board argues Medina must show he was injured during the performance of an act of duty as it is defined in the ordinance. Section 3 of Charter Ordinance 205 defines an act of duty as an "act performed by a member within the scope of occupational duties inherently involving special risks not generally assumed by a citizen in the ordinary walks of life, for the purpose of protecting life or property, including an act of heroism as a member." (Emphasis added.) The district court granted summary judgment to the Board on this point.
Our rules concerning the review of summary judgments are long established:
"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be *346 drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, [appellate courts] apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" Miller v. Westport Ins. Corp., 288 Kan. 27, 32, 200 P.3d 419 (2009).
We now turn to the merits of Medina's claim.

We list the relevant portions of the ordinance.
Wichita's Charter Ordinance 205 controls this case. Section 19 governs the award of disability benefits. It states:
"Permanent Service-Connected Disability benefits. Any Member, who shall, while engaged in the performance of his or her duties, be permanently injured or disabled, other than as the result of an occupational disease, and upon an examination by a physician or physicians appointed by the Board of Trustees, be found to be physically or mentally disabled as a result of such permanent Disability or injury so as to render him incapable to perform the duties of the position held by the Member at date of Disability, shall be entitled to be retired, and the Board of Trustees shall thereupon order such Member's retirement and upon being retired, the Member shall be paid a benefit equal to seventy-five percent (75%) of the Salary in effect on the date when Salary payments ceased."
Going further, Section 3 gives definitions that are pertinent to this dispute. A "Service-Connected Disability" is "any physical or mental incapacity resulting from external force, violence, or occupational disease occasioned by an act of duty as a police or fire officer, imposed by the ordinance or rules and regulations of the city, or any other disability, which may be directly attributable to the performance of an act of duty." In turn, an "act of duty" is "an act performed by a member within the scope of occupational duties inherently involving special risks not generally assumed by a citizen in the ordinary walks of life, for the purpose of protecting life or property, including an act of heroism as a member."
Basically this dispute boils down to whether Medina must prove he suffered a "Service-Connected Disability" that can be attributed to an "act of duty." The Board concluded he did. Medina argues he did not. The district court ruled the Board was correct.
In our view, the Board and the district court correctly denied Medina benefits for two reasons. First, Medina's interpretation of the ordinance unreasonably renders a portion of the ordinance meaningless. Second, there is no evidence that Medina suffered a "Service-Connected Disability" and therefore he has failed to prove that he is entitled to disability benefits. We will address these reasons in that order.
Medina contends the phrase "Service-Connected Disability" is only found in the title of the Section 19 of Charter Ordinance 205. Therefore, he argues he need not prove such since no such language exists in the "operative" language of that subsection. He seems to be arguing the title is not as important as the book.
Upon reading Charter Ordinance 205, one can see that Section 19, titled "Permanent Service-Connected Disability Benefits," is the only part of the entire law that refers to a "service-connected disability." (Except Section 10 refers to the appointment of a specialized physician to pass on claims for service-connected disability benefits.) Medina would have us render the title, written by the drafters of the ordinance, meaningless. Appellate courts are admonished to construe statutes in such a way that the construction avoids unreasonable results, and we must presume the legislature does not intend to enact useless or meaningless legislation. See Hawley v. Kansas Dept. of Agriculture, 281 Kan. 603, 631, 132 P.3d 870 (2006).
*347 Medina relies on Arredondo v. Duckwall Stores, Inc., 227 Kan. 842, 610 P.2d 1107 (1980), for support. Indeed, the court in Arredondo did rule the heading or title of a legislative act forms no part of a statute. 227 Kan. at 846, 610 P.2d 1107. But later, in way of explaining the point, the court in Bonanza, Inc. v. Carlson, 269 Kan. 705, 718, 9 P.3d 541 (2000), reasoned an introductory heading of a statute is "not dispositive because the title or caption prefacing the text of a statute is prepared by the Revisor of Statutes and forms no part of the statute itself." Medina's faith in Arredondo then is misplaced. The title for Section 19 was not tacked on after the ordinance was enacted by some revisor of city ordinances, but was created and placed by the drafters of the ordinance.
It is clear to us that the drafters of Charter Ordinance 205 intended for members to demonstrate a "Service-Connected Disability" because that phrase, used in the title, was specifically defined within the ordinance. It makes no sense to us that this defined phrase was meaningless. We hold that under Section 19, Medina was required to show he suffered from a "Service-Connected Disability."
The evidence set out in the record fails to prove any "Service-Connected Disability" that could be attributed to an "act of duty." Medina twisted his knee when he got out of the car, an action common to all and certainly not unique to a police officer. Medina's ankle injury occurred at home when his knee buckled. We see no evidence of any external force, violence, or occupational disease that caused his knee injury.
Proceeding to Medina's next point, that we should employ workers compensation principles here because Section 19 is similar to some language in the Workers Compensation Act, we conclude to do so would be erroneous. Medina urges us to follow the holding in Miller v. Board of Trustees of KPERS, 21 Kan.App.2d 315, 898 P.2d 1188 (1995). But, in our view, Miller does not apply here.
Miller asked the court to apply state workers compensation principles when interpreting a state administrative regulation. The Miller court did so because the two sets of state law were so similar. Unlike Miller, we do not have comparable state statutes but must deal with a municipal ordinance. We find no such precedent in Kansas that would authorize us to apply workers compensation rules to a city's retirement system.
On the other hand, a California Supreme Court case has addressed the issue. The court in Pearl v. Workers' Comp. Appeals Bd., 26 Cal.4th 189, 195, 109 Cal.Rptr.2d 308, 26 P.3d 1044 (2001), held that a section of the workers compensation code did not extend to retirement disability law. In the words of the court, "[i]f the Legislature desires that a provision of substantive workers' compensation law apply in other types of compensation determinations `all that it need do is to make its preemptive intent clear.' [Citation omitted.]" 26 Cal.4th at 195, 109 Cal.Rptr.2d 308, 26 P.3d 1044. We see nothing in Wichita Charter Ordinance 205 that suggests an intent to incorporate state workers compensation principles into municipal police and fire officers disability determinations, and without such a suggestion we will not do so.
The district court properly granted summary judgment to the Board.
Affirmed.